338 P.2d 292

**L. C. BUCHANAN, Plaintiff-Appellant,**

**v.**

**Ancil CARPENTER, Defendant-Appellee.**

No. 6386.

Supreme Court of New Mexico.

April 21, 1959.

390

J. B. Newell, Thomas B. Rapkoch, Las Cruces, for appellant.

R. C. Garland, James T. Martin, Jr., E. Forrest Sanders, Las Cruces, for appellee.

PER CURIAM.

It is ordered that the original opinion and the opinion on rehearing, heretofore filed herein, be and the same are hereby withdrawn and the opinion to follow substituted therefor.

SADLER, Justice.

Upon further consideration of this cause upon rehearing, we have concluded that in the first and original opinion filed we erroneously announced that appellee's (defendant's) motion for dismissal of the appeal was not well taken and should be denied, as it was in the concluding paragraph thereof. The action was one in ejectment and the appellee's motion to dismiss was based upon absence from the record of the testimony of one Hanson, an expert surveyor and engineer, who testified in the cause and, indeed, was the only expert witness who did testify on defendant's behalf after having made a survey by permission of the court of the two small tracts of land involved, the trial court stating at conclusion of the trial, "I am going to have to have further evidence before I can intelligently decide this case."

After the record in the case had been made up, as it now appears on file herein, and as tendered to defendant's counsel for settlement and signing of the bill of exceptions, a waiver was submitted to them which they signed, consenting that without any further notice, "the trial judge may sign and settle said bill of exceptions subject to all proper objections and exceptions thereto as being incomplete or otherwise objectionable." A few days later and on January 14, 1958, defendant's attorneys filed a formal written objection to the signing and settling of the bill of exceptions in the case until such time as the testimony of the witness, Norman A. Hanson, might be transcribed and included in the record for the following reasons:

"That said witness is a surveyor and his testimony was introduced in this case by the defendant and appellee as a material part of his case and that such testimony is vital and important to a review and decision of this case; that the same through no fault of defendant and appellee has either been lost or misplaced and is not included in the transcript of record and that it would be highly prejudicial to defendant and appellee to submit the record as now made up as a bill of exceptions for the reason that the full and complete record in the case would not be before the Supreme Court; that defendant and appellee has stipulated to numerous extensions of time for the purpose of allowing plaintiff and appellant to complete the record in this case, but the defendant and appellee is unwilling to agree to the record as now made up, as it would be an injustice to him, and the Supreme Court would not have before it all the facts in the case upon which to review the judgment of the case."

On the same date, to-wit, January 14, 1958, J. B. Newell, Esq., made the following request to the court and it was followed by a colloquy between the court and counsel on each side, as follows:

"At this time the counsel for the appellant requests the Court to make such addition or correction to the transcript of the testimony, including the evidence of Norman A. Hanson, as he may remember it and if the Court does not remember it, to afford counsel for the appellee opportunity to dictate it in the record, the substance of his testimony so that it may be included in the record at this time, or give him time within which to prepare a summarization of the testimony of Hanson which he claims has not been transcribed by the stenographer who reported this case.

"We want the record to show that the stenographer said that he cannot find the notes of the testimony of this

witness Hanson and we have ordered and paid for a complete transcript, according to the praecipe, of the testimony and pleadings, and it is not fair, we feel, to us that we cannot get the record in the Supreme Court and we feel it is up to the Appellee to furnish what he contends is the testimony and if he doesn't want to do that, we are perfectly willing that the Court give them time to recall this witness for the purpose of introducing any testimony they may desire to introduce by this witness.

"The Court: As far as the Court is concerned, what the witness testified to is a complete blank, I don't remember.

"Mr. Garland: To all of which requests on behalf of the Appellant, Appellee objects for the reason that the witness Hanson testified in this case more than a year before the judgment was entered in this case on March 28, 1957, and counsel for Appellee has no recollection of the substance of the testimony of the witness Hanson, and has in no way impeded the completion of the record, having heretofore stipulated on several occasions for an extension of the record so that Appellant could have the same settled and signed as a bill of exceptions and feels that it would be unfair to Appellee to re-open the case at this date.

"Mr. Newell: I would like the record to show whether or not there has been any attempt on the part of the Appellee to contact the surveyor to see what his recollection was as to his testimony. We would have been perfectly willing, anyway to facilitate this cause, because we are caught in a predicament, and so are they, and it is not the fault of either of us, but we think that the burden is on them to either attempt, by calling him or talking to him and see what he would testify to, give us a chance to object and that might refresh the Court's recollection.

"Mr. Garland: To which counsel for Appellee answers that he has made no effort to determine from the witness Hanson what his testimony was and now asks if counsel for Appellant, if they have made any effort to ascertain what his testimony was.

"Mr. Newell: No, because we didn't consider it our obligation.

"Mr. Garland: It is their obligation when the Appellant wants to bring up the record to the Supreme Court and it is not incumbent on the Appellee.

"The Court: Well, the Court can hardly take any other view, other than the fact that because of the continuances due to the illness of Judge

Mechem this case was strung out for over a year before going to judgment, and that the stenographer or reporter who was responsible for these notes has now left the jurisdiction and in order that the record will be complete, I wish to call Hanson back in here and let the Court question him to see if he remembers.

"Mr. Garland: To which the Appellee excepts and objects. With reference to the illness of Judge Mechem, it is Appellee's opinion that his illness was not disabling to the extent of preventing the record from being completed, since his death did not occur until—

"The Court: That isn't what I meant, Mr. Garland. I meant by that that it was set down on numerous occasions and most of them at the request of Judge Mechem it was continued. Once it was continued on your proposition. That was the reason it took so long to go to judgment.

"I am going to issue a subpoena for this fellow Hanson and have it served forthwith.

"Mr. Garland: Wait a minute, Judge, about the time he is to come in here, let's consider what we have got to do.

"The Court: The first thing I have got to do is to question him to see whether he has any recollection or whether he can testify.

"Mr. Garland: I thought you meant to bring him in here to re-testify.

"The Court: No, I have got to find out first.

"(Friday, January 24, 1958)

"(Court convened to take the testimony of the Witness Hanson and the Witness Hanson not being present, the case was continued until Thursday, January 30, 1958, at 4:00 P.M.)

"(Thursday, January 30, 1958)

"The Court: This cause was heretofore set to take the testimony of a witness whose testimony was lost, the witness, Norman A. Hanson, and then continued for further opportunity to try to obtain the presence of Hanson. The Court will have to find that the witness Hanson is out of the jurisdiction of this court, out of the jurisdiction of the State of New Mexico, and the Court cannot compel the attendance of this witness in any way; that because of the fact that this case has been dragging for some two years, the Court feels that there has to be an end some time or other and it is therefore, after making every reasonable effort to meet the demands of both parties in completing the record, ordering that the transcript be

transmitted in its present form to the Supreme Court.

"To further explain what efforts were made by the Court to obtain the presence of the witness Hanson, at the hearing previously set for passing on the bill of exceptions where these requests were made, the Court continued the matter and ordered a subpoena issued for a day certain, being the 24th day of January, 1958, when the Court convened to take the testimony of this witness. He was not present, whereupon the Court sent for the sheriff and asked him what the status of the witness was. He said that he had found out that he had left the State of New Mexico, and was living in El Paso, Texas. I then ordered him to call the home of the witness Hanson, whereupon he did and reported to the Court that Hanson was on a job surveying and would not be back for a couple of days, that he had talked to his wife and his wife said she would inform him that they desired to have his presence in Court as a witness on the 30th day of January, 1958, at 4:00 P.M. At 4:30 P.M. on said day, the witness Hanson had not shown, the Court proceeded to make the foregoing record.

"Mr. Garland: The Defendant Carpenter hereby renews the objections to signing, settling and sealing the bill of exceptions, which are in writing, and which have heretofore been filed herein, and objects to the Court signing and settling the record as a bill of exceptions for the reason as heretofore stated, that the same does not contain the testimony of the witness Norman A. Hanson."

The reporter's certificate which was executed by Jimmy R. Galloway, the court reporter but who resigned as such before the record was completed, purported to show that the record was a full, true and correct transcript of the testimony taken at the trial. Such was not a correct statement, as the record on its face shows, and particularly the judge's statement that the record is not a full and complete transcript of such testimony and, by the statements, made by counsel for both parties as well as certain stipulations between the parties, hereinafter mentioned.

As a background to the foregoing colloquy between the trial judge and opposing counsel it should be pointed out that on July 19, 1957, plaintiff's counsel filed a motion for extension of time within which to perfect appeal and prepare transcript, giving as a reason therefor that the official court reporter had been unable to complete transcript due to stress of business, but would be able to do so within a period of two more months. On the same day the court granted such extension until September 19, 1957.

Shortly prior to the date mentioned and on September 16, 1957, opposing counsel entered into a stipulation giving plaintiff (appellant) until October 19, 1957, within which to complete the transcript and file the appeal in the Supreme Court. October 12, 1957, defendant's counsel further stipulated with plaintiff for an extension until November 19, 1957, within which to complete the record and file same in the Supreme Court.

A few days before and on November 15, 1957, defendant further stipulated with opposing counsel extending his time for perfecting appeal by filing transcript in Supreme Court until December 19, 1957. December 12, 1957, the time for such purpose was further extended by stipulation of counsel giving plaintiff (appellant) until January 20, 1958, within which to complete the transcript and file his appeal in the Supreme Court.

Thereafter, and on January 15, 1958, counsel for plaintiff filed motion in the district court for extension of time to settle bill of exceptions reciting, among other things, that the transcript had been filed in the cause and notice given to opposing counsel to have the same settled as a bill of exceptions on January 14, 1958, and that the attorney for defendant (appellee) objected to the court settling same because it did not contain the testimony of one of their witnesses and as neither attorney could make a statement as to what the witness had testified, nor could the court recollect the testimony due to the fact that it had been more than a year since the testimony was taken, the court of its own motion directed that a subpoena be issued for this witness to appear on Friday, January 24, 1958, with notes of his survey so that the court could ascertain, if possible, what his testimony had been.

The motion went on to point out that the plaintiff's time for filing the record with the Supreme Court would expire on January 20, thereafter, and suggested an extension of 30 days to give ample time to include the statement of this witness of his testimony, to be included in the transcript. It was pointed out that this testimony was not included originally due to the fact that the stenographer claimed to have lost his notes of the testimony, which was said to be no fault of either party to the cause.

As shown by the statement of the court hereinabove quoted, when the court convened to take the testimony of this witness, Hanson, pursuant to subpoena previously issued, the witness did not appear, being out of the state and residing in El Paso, Texas. Telephone communication with his wife indicated that he was absent on a surveying job and would not be back for a couple of days. This was the last heard of him and was all so far as he was

concerned. He never appeared thereafter and his testimony, taken at the trial, is not and could not be included in the transcript. The sole question for our determination, therefore, is whether the defendant (appellee) can be compelled to rest a review of the case on the record without the testimony of this material witness. It is our considered judgment that he cannot.

■ It has been so long settled as to be almost axiomatic that the duty of having a transcript properly prepared and filed, incident to an appeal, rests upon the appellant, or plaintiff in error. Only a few cases need be cited as declaring this proposition. Loftus v. Johnson, 22 N.M. 302, 161 P. 1115; Norment v. Mardorf, 26 N.M. 210, 190 P. 733; Baca v. Unknown Heirs, 20 N.M. 1, 146 P. 945.

So much time had elapsed since the actual trial that none of the parties nor the court, itself, could supply from memory the missing testimony, as shown by a statement of the judge, to wit:

"As far as the court is concerned, what the witness testified to is a complete blank, I don't remember."

But the witness had made a survey and unquestionably his testimony related to the survey and the boundaries of the property involved.

As a matter of fact, the plaintiff takes the position, apparently, that the duty rested upon the defendant as an appellee to produce the missing witness and endeavor to resurrect his testimony. Neither party blames or finds any fault with the other for the unfortunate situation resulting in the loss of the court reporter's notes. We may be excused for quoting again a short excerpt of the colloquy between counsel exposing their relative views:

"Mr. Newell: * * * We would have been perfectly willing, anyway to facilitate this cause, because we are caught in a predicament, and so are they, and it is not the fault of either of us, but we think that the burden is on them to either attempt, by calling him or talking to him and see what he would testify to, give us a chance to object and that might refresh the Court's recollection.

"Mr. Garland: To which counsel for Appellee answers that he has made no effort to determine from the witness Hanson what his testimony was and now asks if counsel for Appellant, if they have made any effort to ascertain what his testimony was.

"Mr. Newell: No, because we didn't consider it our obligation.

"Mr. Garland: It is their obligation when the Appellant wants to bring up the record to the Supreme Court and it is not incumbent on the Appellee."

In a final stand, the plaintiff as an appellant must seek to extricate himself from the unfortunate position occupied by invoking the provisions of Supreme Court Rule 16, subd. 4. It, in effect, provides no appeal or writ of error shall be dismissed, or otherwise disposed of, except upon the merits, upon other than jurisdictional grounds without a showing of prejudice to the moving party, satisfactory to the court, or that the ends of justice so require. In a case of this nature where lines and boundaries are involved prejudice to the defendant or appellee can almost be presumed. Indeed, in our original opinion filed herein we displayed confusion on this very score.

Counsel for defendant in brief supporting motion to dismiss, states:

"The sole issue in this case is the ownership of a small tract of land and in order to determine ownership, it was necessary that former boundaries and adjacent tracts be established by competent evidence; and it was evidence of this nature given by the surveyor, Hanson, that enabled the Trial Court to arrive at its decision.

"It is more than obvious that the Trial Court must have considered the testimony of the witness Hanson. Although it may work a hardship on appellant to have the case dismissed by this Court, at the same time it would work an equal hardship upon appellee to have the case reviewed by this Court on only a portion of his evidence which was a material part of his case."

We are unable to say the defendant (appellee) does not present the showing of prejudice required, if the cause is to be reviewed without the testimony of the witness, Hanson.

We should state that this appeal does not come before us on a praecipe calling for a partial record with a statement of the questions the appellant desires to have reviewed and portions of the record he deems essential to such review, as authorized by Supreme Court Rule 12. Presumably the cause comes up as if on a "complete record," though admittedly it is not complete.

It is well, also, to say in closing that in withdrawing the two opinions already filed we intended thereby that all said in either by way of contrasting the function of the two limitation statutes discussed, namely, 1953 Comp., §§ 23–1–21 and 23–1–22, should be disregarded in view of fact the same was written by us unmindful of the amendment of § 23–1–22 by L.1947, c. 145, or its significance, certainly, providing among other things that the person or persons described "so holding or keeping possession * * * for the term of ten (10) years" as thereinabove provided, should "have a good and indefeasible title in fee simple to such lands,

398

tenements and hereditaments," an amendment neither specifically mentioned nor expressly commented upon by the court, or by opposing counsel in briefs filed in the cause.

It is understandable how this easily could have happened. In the same year, by L.1947, c. 203, § 4 (1953 Comp., § 70–1–29) another proviso was enacted amending the law of conveyancing as it theretofore existed, declaring that quitclaim deeds of the kind mentioned should have the effect of a deed in fee simple to any interest the grantor owned in the premises described. So much was said in the briefs of both parties of this amendment or innovation touching quitclaim deeds, that everyone, court and counsel, as well as members of this Court, with their minds centered on it, simply overlooked the fact or the effect on 1953 Comp., § 23–1–22, of the amendment made by L.1947, c. 145, § 1, hereinabove pointed out.

It follows from what has been said that the motion to dismiss is well taken and should be sustained.

It is so ordered.

LUJAN, C. J., and McGHEE, and COMPTON, JJ., concur.

CARMODY, J., did not participate.